## FIRST NATIONAL BANK OF SHERIDAN v. CITIZENS' STATE BANK OF DUBUQUE, IA., ET AL.

APPEAL AND ERROR—FINDINGS—SEPARATE STATEMENT OF CONCLUSIONS OF LAW AND FACT—REQUEST FOR SEPARATE FINDINGS—DEEDS—MORTGAGES—HOMESTEAD—ACKNOWLEDGMENT—CORPORATIONS—STATUTE OF LIMITATIONS—PLEADING—AMENDMENTS—EXTENSION OF TIME OF PAYMENT OF MORTGAGE DEBT—ACTIONS.

1. Alleged error in the failure of the trial court to state in writing the conclusions of fact separate from the conclusions of law cannot be considered unless the record discloses a request therefor made in due season.

2. A recital in the motion for new trial, or a statement in an affidavit thereto attached, is insufficient to show that a request was made in due season for a separate statement in writing of the conclusions of fact and law.

3. A request for a separate statement in writing of conclusions of fact and law is made too late to require compliance therewith, which is not made until after the judge has announced his decision and directed the preparation of a decree, five months after submission of the cause.

4. An acknowledgment taken in the manner required by the statute (R. S., Secs. 2770, 2776) is an essential element to render the mortgage of a homestead by a married man effectual and valid as a release or waiver of the homestead right.

5. The mortgage of a homestead by a married man is void as to the homestead interest, where the acknowledgment is

taken and certified to by an officer disqualified and incompetent to act on account of interest in the conveyance.

6. An acknowledgment taken before one who is a party to the conveyance, or is beneficially interested therein, is void.

7. One who is a stockholder, as well as an officer, of a corporation is disqualified to take the acknowledgment of an instrument to which the corporation is a party, or in which it is financially or beneficially interested.

8. A mortgage upon a homestead by a married man, executed by himself and wife, was acknowledged before a notary public, who was at the time cashier and stockholder of a banking corporation having the sole beneficial interest in the mortgage, although the grantee named in the mortgage was not the bank, but a party who acted solely for the bank and had no interest in the mortgage except as trustee for the bank. *Held,* that the notary so taking the acknowledgment was incompetent to do so, and that the mortgage was for that reason void as to the homestead.

9. The statute of limitations must be specially pleaded, and is not available as a defense under a general denial.

10. In a suit for the foreclosure of a mortgage, wherein a subsequent mortgagee is a party defendant, an allegation in the answer of the latter, that the lien of its mortgage is prior and superior to the lien of plaintiff's mortgage, is not sufficient to present the statute of limitations as a defense.

11. An allegation in the answer of a second mortgagee in a foreclosure suit that its lien is prior and superior to that of the plaintiff does not amount to a pleading of the statute of limitations, and is not sufficient to authorize an amendment specially pleading the statute. Such an amendment amounted to a new defense.

12. The answer of a second mortgagee in a foreclosure suit merely alleging priority of its lien over that of plaintiff will not, after submission of the cause and leave to both parties to amend pleadings to conform to facts proven, authorize an amendment setting up the statute of limitations as a bar to the enforcement of plaintiff's lien as against defendant mortgagee, on account of the extension by plaintiff of the time of payment of his indebtedness by

taking a renewal note; and it was not error for the court to strike out the amendment, in the absence of a proper showing to authorize the presentation of a new defense at the time the amendment was made.

13. The fact that the first mortgagee took a renewal note from the debtor, and thereby extended the time of payment, did not operate to give precedence to the second mortgage, it not appearing that the taking of the renewal note was intended to operate as an extinguishment of the original debt.

14. Generally, the mere extension of the time of payment of the debt by a mortgagee in no way impairs the security, even as against subsequent incumbrances, although the extension may have been made by a renewal of the mortgage debt.

15. The taking of a new note in place of the one originally given does not generally operate as an extinguishment of the lien of a mortgage securing the debt, unless that is shown to have been the actual and express intention of the parties.

16. A mortgage is usually to be regarded as securing the debt rather than the note or other evidence thereof, and so long as the debt can be traced, whatever form it may assume, the security remains good as security for the debt.

17. Upon taking a renewal note for a debt secured by mortgage, and thereby extending the time of payment, it is competent for the note to provide for annual payments of interest, and that failure to pay any interest within a stated time after the same becomes due, shall cause the whole note to become due at once, at the option of the holder.

18. Where a renewal note has been taken for a debt secured by mortgage, and the time extended thereby, with a provision for the payment of interest annually, and that default in paying interest within a stated time after due will authorize the holder to declare the whole sum due at once, an action to foreclose is not prematurely brought where default has occurred in paying interest as stipulated and the whole debt has thereupon been declared due by the holder, although the full period for which the note was given has not expired.

19. The maker of a note cannot, without the consent of the holder, extend the time of payment.

[Decided November 24, 1902.]                    (70 Pac., 726.)

Error to the District Court, Sheridan County, Hon. Richard H. Scott, Judge of the First Judicial District, presiding.

This action was instituted in the District Court sitting in and for the County of Sheridan by the Citizens' State Bank of Dubuque, Iowa, for the foreclosure of three mortgages upon certain real estate in Sheridan County. The mortgages had been executed by George Tschirgi and his wife, Marie T. Tschirgi. The First National Bank of Sheridan was the holder of a mortgage covering some of the lands, and was made a defendant in the suit. The lien of plaintiff's mortgages was adjudged to be superior to the mortgage of defendant bank, and the latter mortgage was held void as to the homestead. Complaining of the judgment, the defendant bank prosecuted error. The material facts are stated in the opinion.

*E. E. Enterline* and *N. K. Griggs,* for plaintiff in error.

The allegation of the answer of defendant bank that the lien of its mortgage was prior and superior to the liens of plaintiff under its mortgage was sufficient to raise the statute of limitations, in the absence of a motion to reform, even though such allegation should be held to state merely a legal conclusion. The amendment offered was for the purpose of more fully setting up the bar of the statute, and it was error to strike it out. (Pomeroy's Code Rem., Sec. 549; Harris v. Halverson (Wash.), 63 Pac., 549.)

The defendant bank requested the court to find and state its conclusions of fact and of law separately. This request was made by one of the attorneys for defendant bank on June 20th, 1900. This request was made long prior to the rendition and entry of judgment, which was not made or entered until the 30th day of August, 1900. Under the provisions of our statutes, the court must find and state its conclusions of fact and of law separately when requested by a party to the action. (R. S., Sec. 3660.) We do not think

that our statutes require that the request be made at the time
of submission of the cause, but rather before the making and
entry of the findings.   Here request was made more than
two months prior to the making and entry of the findings
and judgment.   (Franks v. State, 12 O. St., 1.)   The object
of the statute is to give the losing party an opportunity to
except to the decision of the court on questions of law in-
volved in the controversy.   As it will be seen hereafter, there
were a great many questions of law involved, the decision of
which affected very materially the rights of the defendant
bank, and among a few can be mentioned the extension of
indebtedness secured by plaintiff's mortgages, renewal notes
and contracts entered into between the mortgagor and mort-
gagees of the mortgages assigned to plaintiff.

No cause of action for foreclosure of the mortgage de-
clared upon in second cause of action was stated in the
plaintiff's amended petition.   This cause of action is based
upon a note for $7,316.71, dated November 22, 1887, given
by George Tschirgi to one D. H. Moon, payable on or be-
fore — years after date, the said note being lost.   There
is no allegation that the same was given for value received,
nor is there a copy of the note set forth in the pleading.
It is further alleged that the note was secured by a mort-
gage given by George and Marie T. Tschirgi to said Moon
on certain real estate therein fully described.   It was also
pleaded that the mortgage contained a provision that if the
principal sum or interest was not paid the mortgagee, his
heirs or assignees might sell, as provided by law.   The note
and mortgage, it is alleged, was assigned before maturity
to Peter Kiene, by the latter thereafter to Matthew Tschirgi
and by Matthew Tschirgi to plaintiff; or, rather, we should
say that the renewal note was assigned by Matthew Tschirgi
to plaintiff—not the original note or mortgage.   On Feb-
ruary 8, 1898, it being alleged that $1,291.84 was then
due, a note was given by George Tschirgi to Matthew
Tschirgi in renewal of said indebtedness, which note is set
forth, and from which it appears that it is payable two

years after date, with interest at the rate of 8 per cent. per annum, payable annually, and that a failure to pay the interest within thirty days after due should cause the whole note to fall due, at the option of the holder. The default pleaded is that George Tschirgi failed to pay the interest due on the renewal note falling due February 8, 1899. This action was begun on the 22d day of April, 1899, so that, at the commencement of the action, the renewal note, or the time for payment thereof, had not expired, as it fell due February 8, 1900.

It was not pleaded that the mortgage contained a provision providing for the renewal of the original note, nor, in fact, did the mortgage contain any such provison.

As the petition does not show an existing cause of action as to the matters pleaded in the second cause of action, at the commencement of the suit, the plaintiff must fail in its efforts to foreclose the mortgage declared upon in its said second cause of action, for the reason, as stated, that no default was pleaded in the non-payment of the original indebtedness secured. (4 Enc. Pl. & Pr., 605; Bannigan v. Village, 49 N. Y. Sup., 199; Lewis v. Fox (Cal.), 54 Pac., 823; State v. Humphries (N. J.), 32 Atl., 106; Wiesinger v. Bank (Mich.), 64 N. W., 59; Heard v. Ritchey, 112 Mo., 516; Bank v. Mnfg. Co. (Kan.), 48 Pac., 863.) Such defense may be set up by other defendants than the debtor. (Boisat on Mech. Liens, Sec. 579; Wiltsie on Mort. Forecl., 51-2; Burt v. Saxon, 1 Hun., 551; Thomas v. Turner, 16 Md., 105; Dodge v. Crandall, 30 N. Y., 294; Faxton v. Taxon, 28 Mich., 159.) A suit prematurely brought cannot be maintained. (Ford v. Parr, 57 Ill. App., 139; Collins v. Montemy, 3 Id., 182; Hilliard v. Rothell (N. H.), 8 Atl., 826; Dickerman v. R. R. Co., 44 Conn., 228.)

And the premature commencement of a suit may even be raised by demurrer. (Dickerman v. R. R. Co., *supra;* Cox v. Dawson (Wash.), 26 Pac., 973; Bank v. Mnfg. Co., *supra;* Hicks v. Branton, 21 Ark., 186.) Or may be taken advantage of under general issue on the trial. (Hicks

v. Branton, *supra.*)   It is only in actions involving fraud that actions may be maintained or commenced on claims not due.   (R. S., Secs. 4031-4032; Wearne v. France, 3 Wyo., 273; Crane v. Bode, 5 Wyo., 255; Greene v. Raymond, 9 Neb., 295.)

The second cause of action, in so far as it attempts a foreclosure of the mortgage, and have the same adjudged prior and superior to that of the defendant bank, is barred by the statute of limitations.

The note being payable — years after date, as alleged, then, in law, it is either an instrument due at once, as many authorities hold, or a demand instrument, as held by others.   In either view of the case, the note is barred.

It will probably not be contended that a prior mortgagee can, by any sort of an agreement with the mortgagor, in any way affect a subsequent mortgagee's rights.   The rule is that the first mortgagee cannot renew the note, and thereby extend the statute of limitations so as to affect the junior mortgagee.   Nor as against a subsequent incumbrancer can the mortgagor by stipulation prolong the time of payment of the indebtedness secured by the senior mortgage.   (Bank v. Brooks (Cal.), 59 Pac., 303; Wood v. Goodfellow, 43 Cal., 185; Damon v. Leque (Wash.), 50 Pac., 485; Cottrell v. Shepherd (Wis.), 57 N. W. Rep., 983.)   On a note payable on demand the statute of limitations runs in general from its date, and not from demand of payment.   (Randolph on Com. Paper, Sec. 1607; Farro v. Gay, 146 Mass., 118; Craft v. Thomas, 123 Ind., 513; Trustees v. Smith, 52 Conn., 434; O'Neil v. Wagner, 81 Cal., 631; Milnes Appeal, 99 Pa. St., 493; Shutts v. Fingas, 100 N. Y., 539.)   Some authorities hold that when no time is stated or fixed for payment the note falls due at once.   (Libby v. Mikelborg, 28 Minn., 38; Irvin v. Brooks, 111 N. C., 358.)   The mortgage being a specialty, action thereon is barred in five years.   (R. S., Sec. 3454; Kerr v. Lydecker, 37 N. E., 267; 23 L. R. A., 842; Balch v. Arnold (Wyo.), 59 Pac., 434; Worsham v. Lancaster (Ky.), 47 S. W., 438; Flewellen v.

Cochran (Tex. Civ. App.), 48 S. W., 39; Newhall v. Sherman, 124 Cal., 509.)  And the junior mortgagee may interpose the defense of the statute of limitations, though the debtor does not.  (Lord v. Morris, 18 Cal., 482; Wood v. Goodfellow, *supra;* McCarthy v. White, 21 Cal., 495; Corbey v. Rogers (Ind.), 52 N. E., 748.)

No testimony was introduced to prove the contents of the Moon note.  There was no proof as to the consideration for which it was given, nor when given, or where given or payable, nor when due.  No testimony was offered as to what, if any, rate of interest it drew, nor was it mentioned in the mortgage securing the same.  This note was assigned to Kiene, and by him to Matthew Tschirgi, although the latter claims he never received it.  It was never at any time endorsed or delivered to the plaintiff.  Besides, as appears from the testimony of the president of plaintiff bank, as well as from the testimony of Matthew Tschirgi, plaintiff did not institute the suit.  When a note is alleged to be lost its terms must be clearly shown, and the plaintiff could not recover on the meager proof offered.  (Randolph on Com. Paper, Secs. 689, 1702-3.)

The suit or cause of action cannot be maintained by plaintiff, because the Moon note was never endorsed to it or in its possession.

To support such cause of action, the plaintiff must prove: (a) the execution of the note as alleged; (b) that it was negotiable—negotiability will not be presumed; (c) the plaintiff's title to it by endorsement and delivery, for if not actually endorsed and delivered, the action must be in the name of the payee.  (Blunt v. Norris, 123 Mass., 55; Randolph on Com. Paper, Secs. 1702-3, 689 and cases cited.)

The renewal note in the second cause of action provided for the payment of interest at the rate of 8 per cent. per annum, payable annually.  The original note, so far as appears from the pleading or proof, is silent as to interest. The renewal note extended the time of payment.  It would seem that citation of authority would be unnecessary to sus-

tain our contention that the act of the senior mortgagee in taking such renewal note increased the burdens on the mortgaged premises, and that by reason thereof the senior mortgage became inferior to that of the defendant bank's mortgage. We do not contend that such arrangement cannot be made between the mortgagor and senior mortgagee, but we do contend that such agreement will not be binding upon the junior mortgagee, and we contend that by such act the lien of the junior mortgagee became superior and prior to that of the plaintiff's. (Wood v. Goodfellow, *supra;* Belloc v. Davis, 38 Cal., 242.)

The note described in the third cause of action is dated April 6, 1893, payable — after date, with interest at — per annum. It is alleged that interest was paid until October 6, 1894, in the sum of $450. It is also alleged that on April 6th, 1898, for value received, the note was extended for two years. The default alleged is, non-payment of the note when due, or, rather, at time of demand, and the annual interest due for the years 1895, 1896, 1897, 1898 and 1899, and the taxes for the year 1898.

The note was extended unconditionally. There was no provision in the contract of extension that interest should be paid annually. The contract of renewal was introduced by plaintiff and over the objection of the defendant bank for the same reasons as urged by it to the introduction of the renewal note mentioned in the second cause of action. This note was due immediately. (R. S., Sec. 2338.) There are no annual interest periods, or what is termed "annual rests," after the maturity of a note. (Hovey v. Edminson, 3 Dak., 449.)

Where a creditor has extended the time of payment, an action brought before the date named in such extension cannot be maintained. (Napa Val. Wine Co. v. Daubner (Minn.), 65 N. W., 143.) A valid agreement to extend the time of payment of a debt is a defense to an action on the debt during the time of extension. (Lyman v. Rasmussen (Minn.), 7 N. W., 687.) Taking a note or ac-

ceptance for a pre-existing debt extends the time of payment of such debt until the maturity of the note or acceptance, and suspends the remedy of the creditor until the maturity of the note or bill. (Cox v. Keiser, 15 Ill. App., 432; Goodall v. Boardman, 53 Vt., 92; Loomis v. Donovan, 17 Ind., 198; Charlton v. Tardy, 28 Ind., 452; Seaton v. Fiske, 128 Cal., 549.) The plaintiff declared upon such extension, and, of course, will have to stand or fall upon it.

Unless there is imputation of bad faith or undue advantage arising out of the notary's relation to the corporation—conceding, for the sake of argument, that the defendant bank should be considered the beneficiary at the time of the execution of the mortgage—his certificate, in any event, should be held good. (Cooper v. Hamilton, 97 Tenn., 285; Reed v. Thomas (Tenn.), 37 S. W., 220; Bennett v. Shipley, 82 Mo., 453; Dussaume y. Burnett, 5 Ia., 96.)

It would seem to be a harsh rule that, in the absence of any proof of fraud or undue influence, practiced by the notary, a mortgage should be held void simply because the notary was a stockholder in the defendant bank. The Tennessee cases and others cited by us in support of the validity of the acknowledgment are more in accordance with reason and justice. Both having acknowledged the instrument in accordance with the provisions governing homesteads, they should not now be permitted to defeat the rights of the defendant bank under the proof offered by them.

*E. E. Lonabaugh,* for defendant in error, Citizens' State Bank.

It is a universal principle of practice that, unless the question of the statute of limitations is properly raised by plea, either demurrer or answer, that it will be deemed waived, and the following authorities bear out this statement. In order to avail himself of the bar, the defendant must generally, in some appropriate pleading, as by plea, answer or demurrer, distinctly show that he intends to rely upon the bar of the statute; and if he does not do so the

defense will be waived. (Counsel here cited a large number of cases from the several states, among them being: 68 Ala., 387; 19 Ark., 16; 23 Cal., 16; 71 Cal., 290; 6 Colo. App., 293; 10 Colo., 395; 2 Root (Conn.), 301; 47 Ga., 405; 46 Pac., 1026 (Idaho); 14 Ill., 303; 99 Ill., 641; 37 Ia., 27; 90 Ia., 423; 5 Dana (Ky.), 92; 4 J. J. Marsh, 610; 48 La. Ann., 1539; 61 Me., 38; 32 Me., 41; 4 Har. & J. (Md.), 539; 144 Mass., 470; 81 , Mich., 101; 37 Miss., 579; 101 Mo., 387; 15 Neb., 190; 70 N. W., 25; 64 N. H., 140; 23 N. J. Eq., 263; 4 N. J. L., 370; 6 N. Y., 268; 14 N. Y., 16; 2 Johns. Ch., 191; 109 N. C., 8; 30 O. St., 184; 103 Pa. St., 297; 19 R. I., 108; 22 S. C., 583; 10 Yerg. (Tenn.), 115; 7 Lea (Tenn.), 477; 83 Tex., 537; 89 Va., 524; 78 Va., 683; 22 W. Va., 253; 58 Wis., 588; 4 Wis., 11; 52 Wis., 402; 57 Fed., 901; 109 U. S., 185; 10 Sim., 382; 1 Atk., 494; 79 Minn., 326; 59 Pac., 136; 57 Pac., 687.)

The plea of the statute should be explicit and special, so that the party against whom it is opposed may be put on his guard. (Blake v. Bredall, 15 La., 550.)

The plaintiff in error relies on that portion of its answer which states that its claim is prior and superior to the claim of the plaintiff below as being sufficient to raise the plea of the statute of limitations. As compared with this, it is interesting to examine the case of Caulfield v. Sanders, 17 Cal., 569, where the defendant to a suit on account averred that "each and every item of said account prior to the 10th day of March, 1859, is barred by time; and he pleads and relies upon the statute of California entitled, 'An act defining the time of commencing civil actions,' approved April 22, 1850, in bar of any recovery in said action." He held that this plea is fatally defective, because an averment of a conclusion of law; that a plea of the statute of limitations must aver the facts which bring the demand within the operation of the statute—as that the alleged cause of action has not accrued within certain designated years previous to filing the complaint.

All this argument is based upon the supposition that the First National Bank of Sheridan, defendant below, could raise the statute of limitations as a defense. As the plea of the statute is a personal privilege, and was not raised by the defendants, George and Marie T. Tschirgi, the defendant bank could not raise it. And even if it could have raised this issue, the facts would not support it.

There was no error in the refusal of the court to make separate findings of fact and law in this case, for the reason that the request came too late.

The State of Nebraska adopted the Ohio code, at least it has the same provision as to special findings as Wyoming and Ohio. Recently this question came before the Supreme Court of Nebraska for decision, and it was held that the request for separate findings and statement of law and fact, under the code, must be made at or prior to the submission of the cause.    (Ross v. Barker, 73 N. W., 730.)

Although relying on the proposition that the request was not made in time, yet, even if it were seasonably made, it is not always that a judgment will be reversed for failure to comply with the request.

This is particularly true in cases like this, where the whole record and all of the evidence is before the appellate court. In such cases the judgment will not be reversed unless, upon an examination of the whole record, there is error in the findings of the court.    (Oxford v. Columbia, 38 O. St., 94; Levi v. Daniels, 22 id., 38; Oliver v. Moore, 23 id., 473; Aultman v. Utsey (S. C.), 19 S. E., 617.)    A request should be made before or at the conclusion of the argument. It is too late after court has announced its decision.    (Allen v. Dodson, 17 Kan., 667; Wilcox v. Byington, 12 Pac., 826.)

Plaintiff in error contends that there is some weight in the proposition that the mortgage sued upon did not contain a provision for the renewal of the original note. I do not consider this as important. The mortgage to Moon secured an indebtedness of $7,316.71. It is true that this debt was evidenced by a promissory note, as the mortgage

states. But the debt, not the note, was the important thing. In 1898 this debt had been reduced to $1,291.84. The original note had been lost. ` The debtor, George Tschirgi, agreed with his creditor, Matthew Tschirgi, to whom the mortgage had been assigned, that the above was the correct amount, and thereupon they agreed upon a new note, in renewal of the original indebtedness, extending the indebtedness for two years, but this extension was conditional upon the payment of the interest annually, and if the two parties to this indebtedness had a right to extend the time for two years, it necessarily follows that they had a right to make the condition of annual interest, and that, upon failure to pay the interest annually, the whole amount should become due at once, and the creditor should have the right to proceed to collect. It will also be noticed that the note expressly states that it is given in renewal of the indebtedness originally due to Moon, secured by mortgage and assigned to Matthew Tschirgi. It is the failure to pay the debt that causes the default by which the mortgage may be foreclosed, as provided by its terms. Nor does the plaintiff in error cite any authority to the contrary.

The question arises whether or not the First National Bank of Sheridan can raise the question in the appellate court for the first time as to the maturity of the indebtedness sued upon in the second cause of action. As stated before, the bank seeks to foreclose its mortgage and sell this property. If its contention were upheld that the right of plaintiff to foreclose had not matured, it would not defeat the plaintiff's note or mortgage, nor would it in the least benefit the plaintiff in error, as it would simply result in the dismissal of the cause of action of defendant in error without prejudice, while at the same time it would render it impossible for the First National Bank to foreclose its mortgage. In other words, all parties want this business wound up, the property sold and the proceeds distributed. The Citizens' State Bank is a necessary party

to the proceedings; the amount due on its mortgage must be found before any sale could be had, and the National Bank seeks and has obtained a decree for the foreclosure of its mortgage. In what way can such foreclosure proceed without the Citizens' Bank, and without a determination of the amount due to it?

The plaintiff in error cites a number of authorities to show that the question of the maturity of the indebtedness can be raised by third parties. None of these cases is applicable to the case at bar.

There is no doubt but that there are cases where a third party, whose rights are affected by the proceeding, may come in and raise the question by demurrer or answer, but it will be remembered that the plaintiff in error waived either of these methods of having this question determined.

The objection of prematurity is waived, if not raised, in the primary court, and is remedied by verdict or judgment and cannot be interposed for the first time on appeal. (16th Ency. Pl. & Pr., 884; Hickey v. Thompson, 52 Ark., 234; Fiorer v. Ladd, 25 Or., 423; 29 id., 528; 1 Ency. Pl. & Pr., 22; Carter v. Turner, 2 Head (Tenn.), 52; Moore v. Sargent, 112 Ind., 484; R. R. Co. v. Stevenson, 6 Ind. App., 207; Callette v. Weed, 68 Wis., 428; Clason v. Kehoe, 87 Hun., 368; Bumstead v. Ins. Co., 12 N. Y., 81; Gallagher v. Bell, 82 Ia., 722.)

While we might rest securely on the law that where the statute of limitations is not raised by demurrer or answer, it is waived, yet the position of plaintiff in error on this question is so manifestly contrary to the weight of authority that we do not feel like disposing of this question without a discussion of the proposition advanced.

Counsel say: "It will probably not be contended that a prior mortgagee, by any sort of an arrangement with the mortgagor, can in any way affect a subsequent mortgagee's rights. The rule is that the first mortgagee cannot renew the note, and thereby extend the statute of limitations so as to affect the junior mortgage. Nor as against a subsequent

incumbrance can the mortgagor by stipulation prolong the time of payment of the indebtedness secured by the senior mortgage." With these propositions we take issue. The weight of authority is against it.

It is the general rule that, after a mortgagor *has parted with his title*, the security becomes separate from the debt; he loses all control over the security, the mortgaged premises, and cannot thereafter, by any act of his, either renew or extend the running of the statute as against the owner of the equity of redemption; but I do not understand that any of the states, except possibly California, has adopted the rule that, while the mortgagor retains the title and has his equity of redemption in the property, a subsequent incumbrancer can object to his making partial payments or otherwise extending the time of the maturity of the indebtedness on the first mortgage. Certainly the Washington case cited does not so hold. The question there was upon the right of the mortgagor to revive the mortgage after the bar of the statute had become complete, as against another party who had purchased the lands and was not obligated to pay the debt. The court held that the mortgagor could no more revive the mortgage than he could give a new mortgage upon the land, citing the following authorities: 2 Jones Mortgages, 5th Ed., Secs. 1198, 1202; Wiltsie Mort. Forc., Secs. 65, 410; 13 A. & E. Ency. Law, 760; Schmucker v. Sibert, 18 Kan., 104; Day v. Baldwin, 34 Ia., 380. And *that is the true rule*.

It is also the rule that a junior incumbrancer cannot plead the statute where the mortgagor has, by partial payment or by written agreement with the prior mortgagee, extended the time of payment of the prior indebtedness. (Johnson v. Lasker R. E. Assn., 21 S. W., 961 (Tex.); Carson v. Cochran (Minn.), 53 N. W., 1130.)

The rule is that the plea of the statute is a personal privilege, and a junior incumbrancer cannot avail himself of it. (Wood on Limitations, Sec. 41.) So long as the debt is

kept alive the mortgage lien continues.  (Wood Lim., Sec. 230.)

Where rights of subsequent mortgagees intervene, an acknowledgment or part payment afterwards made by mortgagor, after the bar of the statute had become complete, revives the mortgage so as to defeat any rights of the subsequent mortgagee.  (Wood Lim., 230; N. Y. D. Trans. Co. v. Covert, 29 Barb., 135; Schumacker v. Seibert, 18 Kan., 104.)

I do not consider that the question of limitations will be considered in the decision of this action, further than the question of its waiver by failure to plead it in the court below.

Counsel objects to the proof, or rather lack of proof, in reference to the Moon note, for that plaintiff failed to prove the consideration for the giving of the note, when given, where given, where payable, or when due, or what rate of interest it drew.  The question of the consideration is not one that plaintiff is requred to prove, but defendant must show lack of consideration.  The giving of the note imports a consideration.  The consideration was $7,316.71. The debtor and the owner of the note agreed on the amount then due, to-wit: $1,291, and a new note was given to represent this amount.  This avoided the necessity of any proof.

The rule given as to proof of lost documents would probably apply as between the original maker and the holder of the note, if a dispute should arise between them, but I do not understand that it applies in a case of this character, where the objection comes from a junior incumbrancer.  At any rate the objection made is indefinite.

No proof was necessary to prove the contents of the Moon note, nor was suit brought upon the Moon note. The Moon note having been lost by either Kiene or Tschirgi, the note upon which suit was brought was made, signed and delivered by the mortgagor to Tschirgi to take the place of the lost Moon note, and, it having been made in that man-

ner, it presumably set forth the debt as it existed upon the
original Moon note; and it having been shown by the evi-·
dence that the notes upon which suit was brought were
made by the mortgagor to take the place of the Moon note,
it cannot be presumed by a court of law, without evidence
to support it, that the mortgagor was so reckless as to his
own interest as to give a note for a greater amount or a
greater rate of interest or a different time from that of the
lost instrument.   There was no burden upon him in law
to make a new note.   It was within his power to rest upon
his rights as they stood and demand the production of the
note before the payment of his debt.   The courts must
therefore presume, unless evidence to the contrary is fur-
nished, that he lessened rather than increased his burdens
in making a new note presumably at the request and for the
benefit of the first mortgagee.   The plaintiff here does not
assert that there was any change made by the terms of the
renewal note, except that there was an extension of time
in which the balance of this debt might be paid; and the
terms of the original mortgage introduced in evidence and
the new note show conclusively that during the time the
mortgage had been running a very large part of the original
indebtedness had been paid by the mortgagor, leaving in
comparison the sum to be paid on the renewal note a mere
bagatelle.   If, however, this renewal note increased the bur-
den upon the land and thus affected the rights of the plain-
tiff in error, it was the duty of the plaintiff in error to fur-
nish the court evidence of that fact.   The plaintiff in error
is now asserting that its rights were altered by the making
and delivery of this renewal note.   It was for it to furnish
the trial court with proof of its assertion.   Clearly the bur-
den of proof was upon it, and not upon the plaintiff below,
to show to the court an alteration or invasion of its rights.
The plaintiff below having declared upon a note which it
produces and offers in evdence, together with evidence that
it was given in place of a lost note for a much larger amount,
shows clearly a lessening of the burden upon the land prior

to the plaintiff in error's lien, and if for any reason it was
an increase of such burden, it is the duty of the party alleg-
ing such change to furnish evidence thereof, under proper
allegations in its pleading. Moreover, it was the duty of the
plaintiff in error to challenge the attention of the court
below to such change, both by its pleading and its proof.
It cannot omit in its pleading all reference to allegation con-
cerning such alleged abridgement and change of its rights
and go to trial without furnishing the court such evidence
under proper amendment to those pleadings, and then raise
the question for the first time in this court. It cannot, by
a mere general objection that the substitute note was in-
competent and irrelevant, clear itself of this duty to the trial
court. The note on its face, with the proof that it took the
place of the lost note, is both competent and material.

Much of the discussion relating to the second cause of
action applies also to the third.

The so-called renewal contract is nothing more than an
admission of the indebtedness. Aside from the fact that
it is not signed by either Matthew Tschirgi or the Citizens'
State Bank, it is evident, from an examination of the
paper, that is simply an agreement in writing, signed by the
mortgagor, for the purpose of keeping the mortgage debt
alive. This is evident from the surrounding circumstances.
Here is a note for $5,000, on which nothing has been paid
since 1895. Had nothing whatever been paid, the note
would have become barred in the spring of 1898. To avoid
this, the maker of the note signs a paper saying that he
extends the note and mortgage for two years, meaning
thereby he keeps it alive for that time. This, the plaintiff
in error claims, is an extension of the debt for two years;
and, by reason of this, suit cannot be brought upon the note,
for the reason that this exhibit forms an absolutely incon-
trovertible extension of the time of payment of the said
note. This is certainly new law. George Tschirgi, the
maker of a note, signs a paper, by which he says that, for
value received, he extends the time of payment of a note

which he himself has signed for two years. If this be declared law by this court, it will be hard to collect notes in this State for some time to come.

It is not the universal rule that an extension of time of payment prevents suit before the expiration of the extension. (Ayers v. Hamilton, 131 Ind., 98.)

*W. S. Metz* and *J. F. Hoop,* for George and Marie T. Tschirgi.

We submit that Mr. Burrows was incompetent to act in the taking of the acknowledgment of George Tschirgi and wife, and that the instrument is null and void as to them, standing as if no acknowledgment had been taken or made. This proposition is supported by the following authorities: Miles v. Kelly, 40 S. W., 599, was a case where a mechanic's lien had been given to the Waco Building Association on a homestead, and James I. Moore, the notary who took the acknowledgment, was the secretary, manager and one of the principal stockholders in the association. These facts appearing in the evidence, the court says:

"The property then being a homestead, to create the mechanic's lien her acknowledgment in the form stated was indispensable. Her acknowledgment was a nullity. James I. Moore, the notary who took her acknowledgment, was disqualified from performing the act, because of his interest in the transaction. He was the general managing agent for the association, made the loan, and was a large stockholder in the concern, and was interested to the extent of his commissions on the gross earnings of the business carried on. He could not take the acknowledgment of the parties and his act in attempting it was a nullity," citing Sample v. Irwin, 45 Tex., 573; Brown v. Moore, 38 Tex., 648; Morton v. Lowell, 56 Tex., 646. The court held there was no lien and that the court below erred in attempting to enforce it.

Horbach v. Tyrrell, a Nebraska case, 67 N. W., 485, is in line with the Texas cases. In that case, while there was a

finding that the party who took the acknowledgment was an officer of the interested company, yet there was no finding that he was a stockholder in the company. The substance of the decision is: (1) A conveyance of real estate, such real estate being a homestead, is absolutely void unless acknowledged. (2) Where it is not shown that the officer taking the acknowledgment is a stockholder in the mortgagee company, the acknowledgment will not be held void from the fact that he is the secretary and treasurer thereof.

It is quite evident from the opinion that if the proof had shown that the notary was also a stockholder in the mortgagee company the mortgage would have been held void on account of the acknowledgment.

In Smith v. Clark (Ia.), 69 N. W., 1011, it is held that an acknowledgment taken by a notary public who is a stockholder in the bank which is a beneficiary under the mortgage is void. The case in 5 Iowa, 96, cited by opposing counsel, was overruled in Wilson v. Traer, 20 Iowa, 231.

The case of Kothe v. Krag-Reynolds Co. (Ind.), 50 N. E., 594, contains a full discussion of the question as to the interest which disqualifies a notary public from acting, and the conclusion arrived at is summed up as follows: An acknowledgment of a mortgage taken by a notary public who was a stockholder and officer in the corporation which was the mortgagee is void, both at common law and under the statutes of Indiana.

Potter, Chief Justice.

This suit was instituted in the District Court April 22, 1899, by the Citizens' State Bank of Dubuque, Iowa, for the purpose of foreclosing three certain real estate mortgages executed by George Tschirgi and his wife, Marie T. Tschirgi, to secure the payment of certain promissory notes given by said George Tschirgi, or by him and his wife. Matthew Tschirgi, the father of George, the First National Bank of Sheridan and E. A Whitney were made

parties defendants as having or claiming to have some interest in or liens upon the lands covered by the mortgages. Pending the settlement of the issues in the case, Catherine Tschirgi, the wife of Matthew, was made a party defendant, and her interest was disclosed by appropriate pleadings, as was also the interest of Matthew Tschirgi. Simeon E. Baldwin does not seem to have appeared in the cause until the rendition of the final decree, whereby, by consent of all the parties, the title to a certain tract of the lands involved was quieted in him. The First National Bank of Sheridan being interested in the lands, or a part thereof, as the owner of a mortgage executed to E. A. Whitney by said George and Marie T. Tschirgi, appeared and answered, and by cross-petition set forth its mortgage and prayed for its foreclosure, alleging the same to constitute a lien superior and prior to the mortgages held by the plaintiff, notwithstanding that it was subsequent as to time of execution.

Five separate tracts of land were originally involved in the controversy, but in this court the contest is narrowed to two of the tracts. The title to one of the tracts originally involved was, as above stated, quieted in Simeon E. Baldwin, by consent of all the parties; and by like consent the title to another tract was quieted in Matthew Tschirgi. A third tract, upon which the plaintiff was decreed a first and prior lien under one of its mortgages, is out of the case, the defendant bank, plaintiff in error here, not complaining of the decree in that respect.

By the final decree of the District Court, the mortgages upon the other two tracts held by the plaintiff, the Citizens' State Bank of Dubuque, were found and adjudged to be prior and superior to the mortgage of the defendant bank— the First National Bank of Sheridan; and the mortgage of the last named bank was adjudged void so far as it affected the homestead of the mortgagors; and in the decree providing for the sale of the homestead, the homestead exemption of $1,500 was ordered paid to said George and

Marie T. Tschirgi, after satisfaction of the amount due upon the mortgage of the Citizens' State Bank covering that tract, and before the application of any of the proceeds of the sale thereof, toward the mortgage thereon of the First National Bank.

The First National Bank of Sheridan brings the cause here on error, and complains of the decree in so far as it relates to the homestead and the validity of its mortgage covering the same, and adjudges the mortgages of the plaintiff bank to constitute superior liens upon the two tracts now in controversy. Before proceeding to a discussion of these matters, we will dispose of a preliminary question raised by plaintiff in error.

The cause was tried and submitted to the court, and thereupon taken under advisement on the 4th day of January, 1900. Final decree and judgment was rendered August 30, 1900. The findings of the court to some extent at least are contained in the decree, but it is contended that there is not a separate statement of the conclusions of fact and law; and it is urged that error was committed by the court in failing to state its conclusions of law and fact separately, as requested by the plaintiff in error. It may be, and doubtless should be, conceded that the decree does not in form and substance amount to a separate statement of the conclusions of law and fact as contemplated by the statute providing therefor when requested; indeed, the decree states that the issues are found generally for the plaintiff. The statute on the subject is as follows:

"Upon the trial of questions of fact by the court, it shall not be necessary for the court to state its findings, except, generally, for the plaintiff or defendant, unless one of the parties request it, with the view of excepting to the decision of the court upon the questions of law involved in the trial, in which case the court shall state in writing the conclusions of fact found separately from the conclusions of law." (R. S., Sec. 3660.)

One of the grounds for new trial set forth in the motion therefor was that the court erred in failing and refusing to state and find its conclusions of fact and law separately, as requested by defendant bank; and attached to the motion appears to have been an affidavit of the attorney for the bank setting forth that, "after the said cause had been submitted to the aforesaid court for its decision and judgment, and after the Presiding Judge had indicated what his decision or the decision of the court would be, and had requested the attorney for the plaintiff to draw up the decree in accordance therewith, but before entering of the decision and judgment in the said action, to-wit, on or about the 20th of June, 1900, affiant, in behalf of the defendant bank, made request in writing of the said Presiding Judge that the said court and judge should state and find its conclusions of fact and of law separately." The record is elsewhere silent respecting the request for separate findings, and for this reason we think that the question is not presented.

The record should disclose that a request for separate statement of conclusions of fact and law was in fact made, and that it was made in due season. And a recital in the motion for new trial, or a statement in the affidavit attached to the motion, that a request was made, is insufficient. (Smith v. Uhler, 99 Ind., 140; Nickless v. Pearson, 126 Ind., 477; Van Horn v. State, 5 Wyo., 501; Elliott App. Pro., Sec. 732.) But not having been made until after the judge had announced his decision, and directed the preparation of decree, more than five months after the cause had been submitted, the request came too late. The court was not then required to comply with it. (Elliott App. Pro., Sec. 732; Toledo v. Barnes, 1 O. N. P., 188; Wilcox v. Byington, 36 Kan., 212; 12 Pac., 826; Ross v. Baker, 58 Neb., 402.) In the case last above cited, under a statute precisely like our own, the Nebraska court say that "it is proper, in order that the trial judge may examine and consider the questions of fact and law, and formulate and pre-

pare the requisite statements, that the request should be made at the time of the trial, and not later than at the final submission of the cause for decision, or at a later time, to be fixed by the court. The judge should not be called upon at the same time of the rendition of the decree to then particularize in regard to every conclusion of fact and also of law. He undoubtedly might and may do so. We think it discretionary with him, if the request is made later than at the time we have indicated, whether he will comply with it or not."

The mortgage held by the plaintiff in error, and under its cross-petition sought to be foreclosed, covered, in addition to other lands, a tract of one hundred and sixty acres found to be the homestead of the mortgagors, George and Marie T. Tschirgi. The mortgage was given by them to E. A. Whitney to secure the payment of a note made payable to him. He testified that, at the time of the execution of the mortgage, he had no interest in it nor in the debt, but that the debt secured belonged to the bank, and the note and mortgage were made to him for the benefit of the bank. It was, as he testified, the result of an indebtedness previously due to him that he had turned over to the bank. Subsequently he endorsed the note to the bank. He testified that when the note and mortgage were made he was merely acting for the bank. The court found that the mortgage was given to Whitney, as trustee for the bank. The acknowledgment of the mortgage was taken before and certified by a notary public, who was at the time the cashier of the bank and one of its stockholders. Upon the ground that the mortgage was acknowledged before a party interested therein, and in the debt secured thereby, it was held void as to the homestead, to the extent of fifteen hundred dollars, the homestead interest.

Our statute provides that every sale, mortgage, disposal or incumbrance of a homestead shall be "absolutely void" unless the wife of the owner or occupant, if he have any, shall, separate and apart from her said husband, freely

and voluntarily sign and acknowledge the instrument of writing, conveying, mortgaging, disposing of, or incumbering such homestead, and the officer taking her acknowledgment shall fully apprise her of her right and the effect of signing and acknowledging such instrument. It is provided further that no deed or other instrument shall be construed as releasing the right of homestead, unless the same shall contain a clause expressly releasing or waiving such right. And in such case the certificate of acknowledgment shall contain a clause substantially as follows: "Including the release and waiver of the right of homestead," or other words which will expressly show that the parties executing the deed or other instrument intended to release such right; and that no release or waiver of the right of homestead by the husband shall bind the wife unless she join in such release or waiver. (R. S., Sec. 2770; see also Sec. 2776.)

The provisions of the statute make the proposition too clear to require discussion that an acknowledgment taken as required by the statute was an essential element to render the mortgage in question effectual and valid as a release or waiver of the homestead right. (Ogden Building Association v. Mensch, 196 Ill., 554; Gage v. Wheeler, 129 Ill., 197.) And it follows that, should it be held that the acknowledgment was taken and certified to by an officer at the time and in that instance disqualified and incompetent to act, then the District Court correctly adjudged the mortgage void as affecting the homestead interest.

The authority of a party interested in a conveyance to act officially in taking the acknowledgment of the execution thereof has been the subject of frequent judicial determination; and the general rule, sustained by the great weight of authority, is that an acknowledgment taken before one who is a party to the conveyance or is interested therein is void. (Ogden Building Association v. Mensch, 196 Ill., 554; Kothe v. Krag-Reynolds Co. (Ind. App.), 50 N. E., 594; Horbach v. Tyrrell, 48 Neb., 514; Withers

v. Baird, 7 Watts., 227; Brown v. Moore, 38 Tex., 648; Davis v. Beasley, 75 Va., 491; Groesbeck v. Seeley, 13 Mich., 329; Miles v. Kelley, 16 Tex. Civ. App., 147; 1 Devlin on Deeds (2nd Ed.), Sec. 467; 1 Cyc., 553, and cases cited; 1 Ency. L. (2nd Ed.), 493, and cases cited.) In Cyclopedia of Law and Procedure it is said: "Because of the probative force accorded to the certificate, as well as the usually important consequences of the instrument itself, public policy forbids that the act of taking and cer-tifying the acknowledgment should be exercised by a person financially or beneficially interested in the transaction."

Our attention has been directed to the fact that in one case at least where the rule above stated is laid down, there was a statute expressly declaring interest of the officer a disqualification; but it is to be observed that, in that case, the general question was elaborately discussed, and the conclusion reached that, independent of the statute, the disqualification on account of interest existed on grounds of public policy. (Kothe v. Krag-Reynolds Co., *supra*.) It is true that the same reasons have not always been as-signed as the ground or foundation for the principle that interest in the conveyance constitute a disqualification. Some of the decisions have held the act of taking the ac-knowledgment, especially of a married woman when the law requires it to be taken separate and apart from her husband, to be judicial, and the disqualification is declared upon that theory. As to whether the act is a judicial one or ministerial only, there appears to be some conflict in the authorities. Other decisions have found the reason for the rule in the conclusiveness of the officer's certificate, while still others, and among them several of the more recent decisions, and which seem to us to have entered into a deeper consideration of the question, maintain the rule upon the broad ground of public policy, in the absence of any statutory declaration on the subject; and whether the act be ministerial or judicial is regarded as immaterial, or at least as unnecessary to a decision of the question.

Our statutes do not expressly disqualify an officer from taking an acknowledgment in case he should be interested in the transaction or the instrument, nor is the certificate of a notary made conclusive of the facts therein contained. The certificate is, however, constituted presumptive evidence. (R. S., Sec. 2602.) And all deeds and other conveyances of any interest in lands, executed, attested and acknowledged in accordance with the statutory requirements, may be read in evidence without, in the first instance, furnishing other or additional proof of the execution thereof. (R. S., Sec. 2739.) And in case of the loss of the instrument, the record thereof may likewise be read in evidence. (Id.) These provisions, together with those declaring a conveyance properly executed, and acknowledged, when recorded, to operate as constructive notice thereof, serve to attach to an acknowledgment very important and far-reaching consequences. We perceive no sufficient reason, therefore, for going counter to the overwhelming weight of authority, and discarding the general rule prohibiting an officer financially or beneficially interested in a conveyance from taking the required acknowledgment of its execution. Not only do we think the rule a sound one, but the reasons therefor are peculiarly persuasive when applied to the case of an acknowledgment such as that required on the part of a wife in order to release the homestead right under the provisions of our statutes.

Thus far we have referred to the general rule. We come now to the degree or character of interest that will operate to render the officer incompetent to act, as applicable to the facts in the case at bar. There seems to be a direct and somewhat formidable conflict in the authorities as to whether one who is an officer of a corporation, but not a stockholder, is thereby disqualified to take the acknowledgment of an instrument to which the corporation is a party, or in which it is interested. We need not consider that question, since in the case before us the notary was

not only an officer, and one of the principal officers of the bank, but he was also a stockholder. In such a case the authorities present a much greater unanimity; and with remarkably few exceptions, one who is a stockholder, as well as an officer of the interested corporation, is held to be disqualified. (Ogden Building Association v. Mensch, 99 Ill. App., 67; 196 Ill., 554; Kothe v. Krag-Reynolds Co., 50 N. E., 594; Horbach v. Tyrrell, 48 Neb., 514; Wilson v. Griess (Neb.), 90 N. W., 866; Smith v. Clark, 100 Ia., 605; Hays v. Home B. & L. Assn., 124 Ala., 663; 1 Cyc., 555; Iron Belt B. & L. Assn. v. Groves, 96 Va., 138; Merced Bank v. Rosenthal, 99 Cal., 39; Bank v. Rivers, 36 Fla., 575; Miles v. Kelley, 16 Tex. Civ. App., 147.)

An excellent and thorough discussion of this question is to be found in the opinion of the court in Ogden B. Assn. v. Mensch, *supra.* The bank had the sole beneficial interest in the mortgage in question. Although the bank was not named therein as grantee, the individual to whom it was given acted simply for the bank, and he had no interest in it except as trustee for the bank. The paper evidence of the indebtedness was held by the bank, and it had the right to demand the endorsement of the payee therein named at any time. More than that, the mortgagors understood that the debt was due the bank, and that the mortgage was given to secure the bank on account of the debt due to it from them or from the husband, George Tschirgi.

We are unable to escape the conclusion that the notary taking the acknowledgment was incompetent to do so, and for that reason that the mortgage is void as to the homestead. The court committed no error in so holding.

In the second cause of action set out in the petition of the plaintiff, the Citizens' State Bank, it is alleged in substance that on November 22, 1887, George Tschirgi made and delivered to one D. H. Moon his promissory note for $7,316, payable on or before — years after date, and that the said note is lost; that to secure its payment George

Tschirgi and wife made, executed and delivered their mortgage deed covering certain lands, which are described in the petition. The recording of the mortgage is alleged and also assignments thereof from said Moon to one Kiene, and from the latter to Matthew Tschirgi. Thereafter, it is averred, the original note being lost, and there being then due thereon the sum of $1,291.84, said George Tschirgi, on February 8, 1898, made and delivered to said Matthew .Tschirgi his certain promissory note in renewal of said indebtedness for the said unpaid balance. The renewal note is set out in full in the petition, whereby it appears that it was made payable in two years after date, with interest, payable annually, at the rate of eight per cent. per annum; and that it provided on its face that a failure to pay any of the interest within thirty days after it should become due should cause the whole note to become due and collectable at once, at the option of the holder. It is recited in the note that it is given as a renewal of part of the debt secured by mortgage to D. H. Moon, and assigned to M. Tschirgi. It is then alleged that the note had been endorsed and delivered to the plaintiff as collateral security for a certain described indebtedness due from said Matthew Tschirgi, and that the maker had failed to pay the interest that fell due in February, 1899, in consequence whereof the plaintiff elected to declare the whole principal sum to be due, together with the unpaid interest.

It is now contended on behalf of the defendant bank, plaintiff in error here, that as to it, a second mortgagee, action on the debt was barred by the statute of limitations, for the reason that as it is argued that the first mortgagee could not by consenting to an extension of the time of payment of his debt prevent the statute of limitations from running so far as the rights of the second mortgagee are concerned.

As to this, it is sufficient to say that the statute of limitations was not pleaded by the defendant bank. We do not understand that the well settled rule that the statute is not available under a denial is attempted to be controverted by

counsel; but it seems to be urged that an allegation in the answer that the lien of the defendant is prior and superior to that of plaintiff was sufficient to raise the question of the statute of limitations, or, at any rate, that in the absence of a motion to compel it to reform its pleading, the defendant, having made the said averment, should have been permitted to so amend its answer as to clearly plead the bar of the statute.

After the cause had been submitted indeed, the court having granted the parties the privilege of amending their pleadings to conform them to the facts proven, defendant filed an amended answer, wherein the statute of limitations was specially pleaded; but, on motion, that part of the answer was stricken out by the court.

. It is clear that the allegation of the original answer relied on did not amount in any sense to a pleading of the statute of limitations, nor was it sufficient to furnish the basis for the amendment subsequently attempted to be made. The attempted amendment set up an altogether new defense; and even had there been a right upon proper showing under the statute to have interposed the defense by amendment before or even during trial, no such showing was made or offered as would have authorized the amendment at the time it was made; and it is plain that there exists no reasonable ground for the interference of this court with the order striking the allegations constituting the new defense from the amended answer.

It is, however, seriously argued that, in case the defendant bank should be held to have waived the statute of limitations by its failure to plead it, its mortgage ought to have preference over the first mortgage on the ground that the taking of the renewal note increased the burdens on the encumbered premises. Unless the extension of the time of payment thereby preventing the running of the statute of limitations caused the burdens to be increased upon the mortgaged premises under the first mortgage, we are unable to see how such burdens were increased, except possibly that the rate

of interest was increased by the renewal note. The rate provided by the original note was not disclosed, and counsel for defendant bank complains of that; but this court cannot assume that the rate was increased in order to disturb the judgment, should there be anything in the proposition that the circumstance would have operated to reverse the order of the mortgage liens. As already stated, the defendant bank is not in a position to take advantage of the statute of limitations. In this connection it is but proper to mention that, in support of the motion to strike the new defense from the amended answer, an affidavit of counsel for plaintiff below was presented to the effect that, had the statute been set out by way of defense before the trial, it could have been shown by proof of partial payments from time to time that the claim had at no time been barred; and an offer to make such proof without serious delay was made, should the defense be allowed to stand.

We have not considered the proposition contended for, that as against the second mortgagee the holder of the prior incumbrance could not by agreement with the mortgagor prevent the running of the statute, since we do not regard that question as within the issues. The rule is laid down that the mere extension of the time of payment in no way impairs the security even as against subsequent incumbrances, although the extension may be effected by a renewal of the mortgage note. (1 Jones on Mortgages, Sec. 355; 2 id., Secs. 924, 925, 942; 21 Ency. L. (2nd Ed.), 664, and cases cited; Kearby v. Hopkins, 14 Tex. Civ. App., 166.) And that the taking of a new note in place of the one originally given does not operate as an extinguishment of the mortgage lien, unless that is shown to have been the actual and express intention of the parties. (20 Ency. L. (2nd Ed.), 1063.) The thing secured is the debt, rather than the note or other evidence thereof, and so long as the debt can be traced, whatever form it may assume, the security remains good as security for the debt. (20 Ency. L. (2nd Ed.), 959; 2 Jones on Mort., 924; Simmons Hdw. Co. v.

Thomas, 147 Ind., 313; Bray v. First Ave. Coal Min. Co., 148 Ind., 599; McCoughrin v. Williams, 15 S. C., 505.)

Not only was there a failure to show that the taking of the renewal note was intended to operate as an extinguishment of the debt, but it definitely appears by recital in the body of the new note that it was given as a renewal of part of the debt secured by mortgage to Moon, which had been assigned to M. Tschirgi, the payee named in such renewal note.

The further objection is urged that the suit was prematurely brought. The ground of this objection is that the suit was commenced before the expiration of two years after the date of the renewal note. But the note itself provided for annual payments of interest, and that a failure to pay any interest within thirty days after date should cause the whole note to become due at once, at the option of the holder. That provision was as much a part of the agreement as the promise to pay within two years after date; and we are unaware of any rule of law that prevented the parties upon extending the time of payment of the debt, doubtless then past due, to make the extension for the full term of two years conditional upon the prompt payment of the annual interest, and if not paid that the holder should be authorized to declare the whole amount due.

The third cause of action is based upon a note for $5,000, given April 6, 1893, by George Tschirgi to Matthew Tschirgi, and a mortgage securing the same executed by said George Tschirgi and wife. The note was afterwards endorsed and the mortgage assigned to the plaintiff, the same being held by the latter as collateral security for the debt already mentioned due to the plaintiff from Matthew Tschirgi. The maturity of the note was not stated therein otherwise than as follows: "———— after date, without grace." The rate of interest was not stated, the space therefor being left blank; but as to interest, it is alleged in the petition that interest had been paid up to October 6, 1894, in the sum of $450, the same being at the rate of six per cent.

per annum. On the 17th day of February, 1898, George Tschirgi signed a paper reading as follows: "For value received, the matter of payment is hereby extended for two years from April 6, 1898, on a certain promissory note dated April 6, 1893, for $5,000, executed by me to Matthew Tschirgi, which note is hereby renewed for two years from April 6, 1898."

The note provides that interest shall be payable annually, and both note and mortgage contain a provision to the effect that a failure to pay interest within thirty days after due shall cause the whole note to become due and collectible at once, at the option of the holder.

There is no allegation in the petition of the exercise of the option, but the default in the mortgage is alleged to have occurred by reason of the failure to pay the note when demand was made for payment, and failure to pay the annual interest due for the years 1895, 1896, 1897, 1898 and 1899, as well as failure to pay the taxes on the property for the year 1898; the intention being evident to treat the note as one payable on demand, and the attempted renewal for the period of two years from April, 1898, as not consummated, in the absence of consent thereto on the part of the holder. And it seems to be manifest that George Tschirgi could not of his own volition, without the consent of the holder, arbitrarily extend the time for the payment of the note. That there was any such consent or agreement between the parties is not shown, nor was any consideration therefor shown. At the date of the writing the note and mortgage had passed into the hands of the plaintiff, and the only allegation as to the writing is that it was made and delivered to Matthew Tschirgi, although the petition refers to it as George Tschirgi's contract of renewal.

The same objections are made in respect to the third cause of action that are made to the second cause of action, which have already been sufficiently discussed. The same situation as to the statute of limitations prevails in respect to this note and mortgage as was found to exist in relation to the

Moon note and mortgage; and it is unnecessary to enlarge upon what has been said on that subject. Neither do we regard further discussion required as to the effect of the extension of the time of payment, or the premature institution of the suit; except that it might be said that, even should the writing of February, 1898, be considered as an extension for two years, it would at least be doubtful whether the conditions of the note as to maturity at the option of the holder upon failure to pay interest did not continue in force.

We do not think the position of counsel for plaintiff in error can be sustained that the plaintiff declared upon an extension. It is not alleged that the time for payment was in fact extended, but what was alleged is explained above. On the contrary, the averments of default in the conditions of the mortgage seem to proceed on the theory that there had been no valid or binding extension. We have considered the objection that the action was brought prematurely on its merits, but it is at least questionable whether the objection was not waived by a failure to plead it in any way. Counsel for defendant in error advances the proposition that the matter not having been pleaded plaintiff in error is not in a position to take advantage of the point, even if it would have been well taken, if presented in time. The objection not being a valid one, in our opinion, we do not decide the question as to whether such an objection must be raised, if at all, by demurrer, or answer, or some other pleading.

Our attention is called to the fact that the judgment of the court allows an attorney fee of one hundred dollars on account of the Moon mortgage, whereas the mortgage itself provides for an attorney fee of only fifty dollars. It was doubtless the result of in inadvertance on the part of the court; and counsel for defendant in error bank concedes in his brief that the judgment should be modified to that extent, and that they will be willing that it shall be done. We will leave that matter to be attended to in the District

Court. It is apparent that the attention of the court was not called to the mistake. The motion for new trial does not charge error in the amount of the recovery, and it is doubtful, therefore, if it constitutes an error that should be rectified by order of the appellate court. (Syndicate Imp. Co. v. Bradley, 7 Wyo., 228.)

We have referred to and discussed all the points urged by counsel that have been deemed material to a determination of the questions involved. We find no prejudicial error in the judgment, and it will therefore be affirmed. *Affirmed.*

CORN, J., and KNIGHT, J., concur.